IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | |
| YIJIA ZHANG, | : | NO. 12-498 |
| Defendant. | : | |

MEMORANDUM ORDER

AND NOW, this 16th day of January 2014, upon consideration of Defendant Yijia Zhang's Motion to Dismiss Count II of Indictment (Doc. No. 45) and Memorandum of Law in Support thereof (Doc. No. 46), and the Government's Memorandum of Law in Opposition to Motion to Dismiss Count Two (Doc. No. 47) and Supplemental Memorandum (Doc. No. 48), it is hereby ORDERED that Zhang's Motion to Dismiss Count II of Indictment is GRANTED.

I. FACTUAL BACKGROUND

On September 13, 2012, the Government filed an indictment (the "Indictment") charging Yijia Zhang with damaging a protected computer in violation of 18 U.S.C. §§ 1030(a)(5)(A) and 1030(c)(4)(A)(i)(I) ("Count I"), and violating the National Stolen Property Act ("NSPA"), 18 U.S.C. § 2314 ("Count II"). (Indictment 1–5, Doc. No. 1.)

According to the Indictment, Zhang worked as a computer systems manager for "Company A" until July 6, 2010. (Indictment ¶¶ 2, 6.) On June 28, 2010, Zhang copied approximately 6,700 of Company A's confidential files from an unspecified location on Company A's internal network to the desktop computer provided to Zhang by Company A. (Indictment ¶ 7.) Zhang then transferred some or all of these files from his computer to one of Company A's servers (the "Server"). (Indictment ¶ 8.) The copied and transferred files

contained "sensitive information regarding the operation and development of Company A's computer network." (Indictment ¶ 13.) Two days later, on June 30, 2010, Zhang gave Company A written notice that his last day with the company would be July 6, 2010. (Indictment ¶ 6.)

On Saturday, July 3, 2010, Zhang copied approximately 2,800 more confidential files from Company A's network to his desktop computer. (Indictment ¶ 10.) On Sunday, July 4, 2010, Zhang copied roughly 300 more confidential files to his computer. (Indictment ¶ 11.) Zhang then transferred some or all of the confidential files that he had accumulated on his desktop computer that weekend to the Server. (Indictment ¶ 12.) Next, Zhang established an Internet connection between the Server and Internet storage sites in Sweden and Germany that Zhang maintained. (Indictment ¶¶ 3, 14.) Zhang then used this connection to transfer an unspecified number of Company A's confidential files to the Internet storage sites. (Indictment ¶ 14.) After completing this transfer, Zhang covered his digital tracks by deleting unspecified files from the Server. (Indictment ¶ 17.) The deletion of these files eliminated evidence of Zhang's transfers and prevented the Server from functioning as intended. (Id.)

Presently before the Court is Zhang's motion to dismiss Count II of the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). (See Def.'s Mot. Dismiss Count II, Doc. No. 45.) Zhang argues that the allegations in the Indictment fail to state an offense under the NSPA. The Government opposes this motion.

## II.  LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) provides that an "indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "A facially sufficient indictment (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3)

allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." United States v. Stock, 728 F.3d 287, 292 (3d Cir. 2013) (internal quotation marks omitted).

"Under Rule 12(b)(3)(B), a defendant may contest the sufficiency of an indictment on the basis that it fails to state an offense . . . [because] the specific facts alleged fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." Id. (internal quotation marks omitted). A district court evaluates a challenge under this Rule by "determining whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged." United States v. Huet, 665 F.3d 588, 595–96 (3d Cir. 2012).

III. ANALYSIS

Federal crimes are "solely creatures of statute." Dixon v. United States, 548 U.S. 1, 7, (2006). "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175–76 (2009) (internal quotation marks omitted).

The Supreme Court instructs that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." Jones v. United States, 529 U.S. 848, 858 (2000). Accordingly, "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before [the Court] choose[s] the harsher alternative, to require that Congress should have spoken in language that is clear and definite." Id.

The NSPA makes it a crime for a person to "transport[], transmit[], or transfer[] in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud." 18

U.S.C. § 2314. The digital files at issue in this case are neither securities nor money. (Cf. Gov't's Mem. Opp. Mot. Dismiss 2 ("The central issue to this motion is whether there is a difference between 'goods, wares, and merchandise' in paper and digital form.").) Thus, to survive Zhang's motion to dismiss, the indictment must allege: (1) that Zhang transported, transmitted, or transferred goods, wares, or merchandise in interstate or foreign commerce; (2) that those goods, wares, or merchandise had a value of $5,000 or more; and (3) that Zhang knew "the same" to have been stolen, converted, or taken by fraud. Id.; cf. Dowling v. United States, 473 U.S. 207, 214 (1985) (listing the elements of an offense under the NSPA).

Zhang argues that the Indictment fails to state an offense for two reasons. First, Zhang argues that the Indictment fails to allege that "the stolen item was in some tangible or physical form" when it was stolen. (Def.'s Mem. Supp. Def.'s Mot. Dismiss Count II, at 8, Doc. No. 46.) Second, Zhang argues that the Indictment fails to allege the existence of a market for the confidential information stolen by Zhang. (Id. at 12–13.)

The Court must determine whether the NSPA requires the government to make these allegations, and, if it does so require, whether the government makes these allegations in the Indictment.

A. Are Digital Files Transmitted Over a Computer Network Goods, Wares, or Merchandise Within the Meaning of the NSPA?
   1. Does the NSPA Include a Tangibility Requirement?

The NSPA does not define the terms "goods," "wares," or "merchandise." It is an open question in the Third Circuit whether digital files can constitute goods, wares, or merchandise within the meaning of the NSPA. Cf. United States v. Hsu, 155 F.3d 189, 195 n.6 (3d Cir. 1998) (noting that "several cases cast serious doubt as to whether the NSPA even applies to the type of intangible information involved in modern schemes of corporate espionage"). However, the

Third Circuit and the Supreme Court have considered similar issues; and other courts have squarely addressed whether the NSPA criminalizes the theft of intangible information.

In 1959, the Third Circuit held that the phrase "goods, wares, merchandise" in the NSPA is "a general and comprehensive designation of such personal property or chattels as are ordinarily a subject of commerce." United States v. Seagraves, 265 F.2d 876, 880 (3d Cir. 1959). Applying this definition to stolen "geophysical maps" of oil deposits, the Third Circuit held that such maps were "goods or wares or merchandise within the terms of the [NSPA]" because they were "subjects of commerce." Id. at 878, 880. Geophysical maps are tangible objects made valuable by the intellectual property they contain. The Seagraves opinion therefore establishes that the *value* of a stolen item need be tangible, but does not address whether the NSPA covers the theft of purely intangible property. Cf. Dowling, 473 U.S. at 216 (noting that courts interpreting the NSPA have found it irrelevant whether "the item owes a major portion of its value to an intangible component" (citing Seagraves and United States v. Greenwald, 479 F.2d 320 (6th Cir. 1973))).

Roughly 25 years later, in 1985, the Supreme Court addressed whether the NSPA criminalizes the "interstate shipments of bootleg and pirated sound recordings and motion pictures whose unauthorized distribution infringed valid copyrights." Dowling, 473 U.S. at 213. The indictment in that case did not allege how the defendant came into possession of the copyrighted works. See id. at 215 n.7. Rather, the indictment alleged that the "unauthorized use of the musical compositions rendered the phonorecords 'stolen, converted or taken by fraud' within the meaning of the [NSPA]." Id. at 215. Thus, the Supreme Court decided whether the NSPA criminalizes the interstate shipment of bootleg records where nothing tangible was stolen, converted, or taken by fraud.

5

The Supreme Court began its analysis by noting that the text of the NSPA does not plainly cover the interstate shipment of bootleg records for two reasons. First, copyrighted works are not obviously goods, wares, or merchandise. The Court explained that the NSPA "seems clearly to contemplate a physical identity between the items unlawfully obtained and those eventually transported" by "requiring that the 'goods, wares, [or] merchandise' be 'the same' as those 'stolen, converted or taken by fraud.'" Id. at 216 (alteration in original) (quoting 18 U.S.C. § 2314). This requirement applies awkwardly to copyright infringement because "the property rights of a copyright holder have a character distinct from the possessory interest of the owner of simple goods, wares, or merchandise." Id. at 217 (internal quotation marks omitted). Second, the Court noted that "interference with copyright does not easily equate with theft, conversion, or fraud." Id. "While one may colloquially like infringement with some general notion of wrongful appropriation, infringement plainly implicates a more complex set of property interests than does run-of-the-mill theft, conversion, or fraud." Id. at 217–18.

"In light of the ill-fitting language," the Dowling Court "consider[ed] whether the history and purpose of [the NSPA] evince a plain congressional intention to reach interstate shipments of goods infringing copyrights." Id. at 218. The Court found that Congress's purpose in enacting the NSPA was to "assist the States' efforts to foil the 'roving criminal,' whose movement across state lines stymied local law enforcement officials." Id. at 220. The Court then reasoned that "the need to fill with federal action an enforcement chasm created by limited state jurisdiction . . . simply does not apply to" interstate shipment of "merchandise whose contraband character derives from copyright infringement" because "Congress has the unquestioned authority to penalize directly the distribution of goods that infringe copyright, whether or not those goods affect interstate commerce." Id. at 218, 220–21. The Supreme Court concluded that the NSPA

6

does not "plainly and unmistakably" apply to the interstate shipment of bootleg records. Id. at 228. For this reason, the Supreme Court reversed the defendant's conviction under the "time-honored interpretive guideline that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." Id. at 229.

In the years since the Supreme Court announced its opinion in Dowling, the Courts of Appeals for the First, Second, Seventh, and Tenth Circuits have concluded that only tangible property can constitute goods, wares, or merchandise within the meaning of the NSPA. The Tenth Circuit holds that a "computer program itself is an intangible intellectual property, and as such, it alone cannot constitute goods, wares, merchandise, securities or moneys which have been stolen, converted or taken within the meaning of [the NSPA]." United States v. Brown, 925 F.2d 1301, 1308 (10th Cir. 1991). The Court explained that the "element of physical 'goods, wares, or merchandise' in [the NSPA]" is a "critical" limitation "imposed by the statute itself." Id. at 1308–09.

Likewise, the Seventh Circuit holds that the "Comdata codes" used in the trucking industry to transfer money are not "goods, wares, or merchandise" because they are, instead, "information." United States v. Stafford, 136 F.3d 1109, 1115 (7th Cir. 1998). "If this information comes within the statutory terminology of goods, wares, or merchandise," the Court reasoned, "then so does a tip phoned by a crook in Chicago to one in San Francisco that by posing as a police officer he has learned that Wells Fargo bank in San Francisco is poorly protected and so can be knocked off easily." Id. The Seventh Circuit concluded that the NSPA "will not stretch this far" in light of "the statute's age . . . and wording, and the principle that the definition of federal crimes is a legislative rather than a judicial function." Id.

7

The First Circuit agrees that the NSPA "does not apply to purely intangible information," but "*does apply* when there has been some tangible item taken, however insignificant or valueless it may be, absent the intangible component." United States v. Martin, 228 F.3d 1, 14–15 (1st Cir. 2000) (internal quotation marks omitted); see also id. at 13 ("Although intangible, 'purely intellectual' property does not fall within the auspices of [the NSPA], intangible components of tangible items may contribute to the $5,000 value requirement."). In Martin, the First Circuit affirmed the defendant's conviction of conspiracy to transport stolen goods in violation of the NSPA because the jury could have plausibly concluded that the conspiracy involved the interstate shipment of "numerous tangible items." Id. at 15.

Finally, the Second Circuit held recently that the NSPA does not apply to computer code stolen in an intangible form from an employer. In United States v. Aleynikov, the Second Circuit considered an appeal by a defendant, Aleynikov, convicted under the NSPA of "stealing and transferring some of the proprietary computer source code used in his employer's high frequency trading system." 676 F.3d 71, 73 (2d Cir. 2012). On his last day of work, Aleynikov "encrypted and uploaded to a server in Germany more than 500,000 lines of source code for [his employer's high-frequency trading] system." Id. at 74. After a jury convicted Aleynikov of violating the NSPA, he appealed to the Second Circuit, "arguing, among other things, that the district court erred in denying his motion to dismiss the indictment in its entirety." Id. at 75. The Second Circuit explained that whether Aleynikov's conduct falls within the NSPA turns on "whether the source code that Aleynikov uploaded to a server in Germany . . . constituted stolen 'goods,' 'wares,' or 'merchandise' within the meaning of the NSPA." Id. at 76. The Second Circuit, like the Third Circuit, defines the terms goods, wares, and merchandise as they are used

in the NSPA as "'such personal property or chattels as are ordinarily a subject of commerce.'" Id. (quoting In re Vericker, 446 F.2d 244, 248 (2d Cir. 1971)).

The Second Circuit held that the theft of "purely intangible property embodied in a purely intangible format" falls outside the NSPA. Id. at 78. The Court reasoned that the NSPA "presupposes that the thing stolen was a good or ware, etc., *at the time of the theft*" by requiring that the good be "transported with knowledge that 'the same' has been stolen." Id. at 78. Put differently, the text of the NSPA "'contemplate[s] a physical identity between the items unlawfully obtained and those eventually transported.'" Id. (alteration in original) (quoting Dowling, 473 U.S. at 216). The Second Circuit overturned Aleynikov's NSPA conviction because it "decline[d] to stretch or update statutory words of plain and ordinary meaning in order to better accommodate the digital age." Aleynikov, 676 F.3d at 79.

The following year, the Second Circuit again considered the scope of the NSPA when presented with another appeal by a defendant, Agrawal, convicted under the NSPA of stealing "confidential computer code . . . used to conduct high frequency securities trades" from his employer. United States v. Agrawal, 726 F.3d 235, 237 (2d Cir. 2013). Unlike Aleynikov, however, Agrawal stole computer code by "printing the code onto thousands of sheets of paper, which he then physically removed from [his employer's] New York office to his New Jersey home." Id. The Second Circuit affirmed Agrawal's conviction, holding that he was "engaged in the theft or conversion of a 'good' in violation of the NSPA" when he "removed . . . tangible property from [his employer's] offices without authorization, and transported it to his home in New Jersey." Id. at 252. The Court recognized that, "in terms of moral culpability, there may be little to distinguish Agrawal from the defendant in Aleynikov," but nonetheless concluded that

9

only Agrawal violated the NSPA because "it is Congress's task, not the courts', to define crimes and prescribe punishments." Id. at 253.

Not all courts to consider the issue have held that the NSPA includes a tangibility requirement. In 1990, a District Court Judge sitting in the Northern District of Illinois held that the NSPA covers "proprietary business information" sent across "state lines via computer-generated electronic impulses." United States v. Riggs, 739 F. Supp. 414, 420 (N.D. Ill. 1990). The Court found that the defendant's "transfer of [stolen] information across state lines would clearly constitute the transfer of 'goods, wares, or merchandise' within the meaning of [the NSPA]" if the information "had been affixed to a floppy disk, or printed out on a computer printer." Id. at 41. The Court then explained that it saw "no reason to hold differently simply because [the defendant] stored the information inside computers instead of printing it out on paper" because, "[i]n either case, the information is in a transferrable, accessible, even salable form." Id. There is reason to doubt whether Riggs remains good law in the Seventh Circuit. The year after the District Court announced its opinion in that case, the Court of Appeals for the Tenth Circuit wrote that "the Riggs interpretation of the [NSPA] is in error in light of the Supreme Court's focus [in Dowling] on physical goods, wares or merchandise that have themselves been stolen, converted or taken by fraud." Brown, 925 F.2d at 1308 (internal quotation marks omitted.) And in 1998, the Seventh Circuit, without discussing Riggs, held that information cannot constitute goods, wares, or merchandise within the meaning of the NSPA. Stafford, 136 F.3d at 1115.

Similarly, in 2001, a Judge of the United States District Court for the Southern District of New York held that "the transfer of electronic documents via the internet across state lines does fall within the purview of [the NSPA]." United States v. Farraj, 142 F. Supp. 2d 484, 490

10

(S.D.N.Y. 2001). This holding could not have survived the Second Circuit's opinion in Aleynikov.

The government argues that this Court should not be persuaded by the rationales of the Courts of Appeals in cases like Aleynikov and Brown because the reasoning in those cases is "wrong," "inconsistent with logic and [analogous case law]," and "leads to absurd results." (Gov't's Mem. Opp. Mot. Dismiss 2.) Instead, the government urges us to decide that the NSPA includes no tangibility requirement. The government argues that Dowling does not compel a contrary conclusion for two reasons.

First, the government argues that Dowling did not hold that the NSPA requires "a physical identity between the items unlawfully obtained and those eventually transported, and hence some prior physical taking of the subject goods," Dowling, 473 U.S. at 216, because that language is dictum (Gov't's Mem. Opp. Mot. Dismiss 4–5). The government explains that Dowling merely "held that what the defendant transported across state lines—the physical records—was not the 'the same' as the thing that he had taken—the copyright holder's statutory right to limit and license copying." (Id. at 4.) We agree. But, dictum or otherwise, the Supreme Court noted that the "common-sense meaning of the statutory language" limits application of the NSPA to "physical 'goods, wares, [or] merchandise' that have themselves been 'stolen, converted or taken by fraud.'" Dowling, 473 U.S. at 216 (alteration in original) (quoting 18 U.S.C. § 2314). We find this analysis to be highly persuasive. Cf. Aleynikov, 676 F.3d at 77 n.4 (noting that, while Dowling focused on copyright infringement, "the Court's reasoning and analysis focuses on the pure intangibility of a copyright, and the requirement under the NSPA that there be a physical taking and removal of goods").

11

Second, the government argues that any "tangibility requirement was removed when Congress amended the [NSPA] in 1988." (Gov't's Mem. Opp. Mot. Dismiss 3.) That year, Congress amended the NSPA by "striking 'transports' and inserting 'transports, transmits, or transfers.'" Anti–Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181 (1988). It is unclear whether this change removed any tangibility requirement. On the one hand, the new verbs—transmits and transfers—might apply only to the nouns "securities" and "money," which are readily transmitted and transferred in digital form.[1] On the other hand, the addition of these verbs might signal that the NSPA now criminalizes the theft of goods, wares, or merchandise that can be transmitted or transferred in digital form.

We find that the NSPA is ambiguous about whether stolen "goods, wares, and merchandise" must take a physical form. The Third Circuit directs that the ordinary meaning of goods, wares, and merchandise is "personal property or chattels" that are "ordinarily a subject of commerce." Seagraves, 265 F.2d at 880. Based on this precedent, we think that the most natural reading of "goods, wares, and merchandise" is personal property or chattels that "have some sort of tangible existence." United States v. Smith, 686 F.2d 234, 241 (5th Cir. 1982); see also

---

[1] Indeed, the legislative history of the 1988 amendment suggests that the amendment's purpose was to codify appellate court decisions holding that the interstate, digital transfer of money and securities falls within the reach of the NSPA. See, e.g., United States v. Goldberg, 830 F.2d 459, 466 (3d Cir. 1987) ("hold[ing] that electronic transfers of money [were] covered by [the NSPA]" prior to the 1988 amendment). The chairman of the Judiciary Committee explained that the addition of the words transmits and transfers was "designed to codify appellate court holdings that [the NSPA] is not limited to the physical transportation of stolen or fraudulently acquired money or property but also extends to the situation in which such *proceeds* are transmitted or transferred electronically in interstate or foreign commerce." 134 Cong. Rec. S17360-02, 1988 WL 182529 (1988) (emphasis added) ("[I]t seems appropriate to add verbs— 'transmits' and 'transfers'—that clearly reach acts of electronic movement of money."); see also Aleynikov, 676 F.3d at 78 ("The evident purpose of the [1988] amendment . . . was to clarify that the statute applied to non-physical electronic transfers of *money*.").

United States v. Bottone, 365 F.2d 389, 393 (2d Cir. 1966) ("To be sure, where no tangible objects were ever taken or transported, a court would be hard pressed to conclude that 'goods' had been stolen and transported within the meaning of [the NSPA] . . . ."). This interpretation fits best with the statutory requirement that the goods, wares, or merchandise transported in interstate or foreign commerce be the same as the goods, wares, or merchandise stolen, converted, or taken by fraud; and is consistent with the approaches taken by every United States Court of Appeals to consider the issue.

The government's contrary position is not unreasonable. In this digital era, we think that intangible products could reasonably be understood to constitute personal property that is ordinarily the subject of commerce. For example, we agree with the government that one could reasonably conclude that a consumer who pays for and downloads a digital copy of Microsoft Windows has purchased a good.[2] (See Gov't's Mem. Opp. Mot. Dismiss 19–20.) However, the government's position merely demonstrates that there is some ambiguity surrounding the NSPA's reach.

When faced with an ambiguous criminal statute, this Court must construe that statute in the defendant's favor. Jones, 529 U.S. at 858. We therefore conclude that the NSPA does not

---

[2] The government has filed a supplemental memorandum addressing the Seagraves Court's citation to Western Union Telegraph Co. v. Lenroot, 323 U.S. 490 (1945). (See Gov't's Supp. Mem. on Mot. Interstate Transmission Count of Indictment, Doc. No. 48.) In Seagraves, the Third Circuit wrote that the stolen geophysical maps of oil deposits were "goods or wares or merchandise within the terms of the [NSPA]" because they "were shown without doubt to be subjects of commerce, albeit of a specialized nature." Seagraves, 265 F.2d at 880 (citing Lenroot, 323 U.S. 490). The government argues that this "citation to Lenroot in the Seagraves opinion is significant because Lenroot held that under a different statute with a nearly identical definition . . . telegrams were 'subjects of commerce.'" We agree with the government that digital goods can constitute subjects of commerce.

13

criminalize the theft and international transmission of intangible property in an intangible form.[3]

To state an offense under the NSPA, the government must allege that Zhang transported, transmitted, or transferred something that had been stolen, converted, or taken by fraud while in a tangible form. The value of that object may derive from intangible information contained within the item; but without a physical manifestation, the stolen property is not goods, wares, or merchandise within the meaning of the NSPA.

2. Does the Indictment Allege the Theft of Something Tangible?

Zhang argues that the tangibility requirement has not been met because "nowhere in the Indictment does the Government state, nor even suggest, that the information [stolen by Zhang] ever took a physical form." (Def.'s Mem. Supp. Def.'s Mot. Dismiss Count II, at 11.) "Instead, the Government alleges that Mr. Zhang transferred electronic files over the internet from a network to a server." (Id.)

---

[3] Of course, this does not mean that such theft is lawful. In 1996, Congress enacted the Economic Espionage Act ("EEA") to protect "proprietary economic information from theft and misappropriation in a systematic, principled manner." S. Rep. No. 104-359, 1996 WL 497065, at *10 (1996). The accompanying Senate Report explains that the EEA was necessary because "the Depression-era National Stolen Property Act . . . is not particularly well suited to deal with situations in which intangible information alone is wrongfully duplicated and transmitted electronically with a few keystrokes" because "it was drafted at a time when computers, biotechnology, and copy machines did not even exist." Id.; see also Adam Cohen, Securing Trade Secrets in the Information Age: Upgrading the Economic Espionage Act After United States v. Aleynikov, 30 Yale J. on Reg. 189, 201 (2013) (noting that, after Dowling, it "increasingly became clear that when they tried to use the NSPA when the physicality condition was not met 'prosecutors were trying to fit a square (intangible secrets) peg into a round (tangible goods) hole.'" (quoting James Pooley, Trade Secrets § 13.03[1] (1997)).
  The EEA makes it a crime to "knowingly engage[] in the theft of trade secrets . . . 'with intent to convert a trade secret, that is related to or included in a product that is produced for or placed in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will[] injure any owner of that trade secret.'" Hsu, 155 F.3d at 195 (quoting 18 U.S.C. § 1832(a)).

The government responds that "storage of information in digital format on a server, a computer hard drive, or a disk is just as physical as the storage on a piece of paper." (Gov't's Mem. Opp. Mot. Dismiss at 14.) The government argues that the Indictment satisfies any tangibility requirement because "the material had a physical embodiment on the servers of Company A" and on Zhang's "storage space in Europe." (Id. at 15.)

We agree with the government that information stored in computer hardware has a physical manifestation. Accord United States v. Walter, 43 M.J. 879, 884 (N-M. Ct. Crim. App. 1996) (noting that "courts will include intangible property under the [NSPA] when tied to tangible property and when the intangible property possesses some business value"). If the government had accused Zhang of stealing some part of Computer A's server that stored propriety information, then we would have had little difficulty concluding that the tangibility requirement were satisfied. Accord United States v. Alavi, No. 07-429, 2008 WL 1971391, at *2 (D. Ariz. May 2, 2008) (finding the tangibility requirement satisfied where the government "allege[d] that [the defendant] physically stole the software program from his employer by loading it onto his computer, and then transported it in its electronic form on his laptop computer in interstate and foreign commerce"). But here, the government accuses Zhang of stealing information by transmitting that information over the Internet. This transmission was no mere "'clever intermediate transcription'" (Gov't's Mem. Opp. Mot. Dismiss 17 (quoting Bottone, 365 F.2d at 393)[4]); it was the act that rendered the digital files stolen, and the act that the government argues violated the NSPA.

---

[4] In Bottone, Judge Friendly wrote for the Second Circuit that "the transformation of the information in the stolen papers into a tangible object never possessed by the original owner should be deemed immaterial" where "tangible goods are stolen and transported and the only
(footnote continued)
15

The government has not alleged, as it must, that the digital files transmitted by Zhang had been stolen, converted, or taken by fraud while in a tangible form. Bits transmitted over the Internet are intangible information falling outside the NSPA's ambit. Accordingly, the government has failed to state an offense under the NSPA.[5]

B. <u>Whether the Indictment Must and Does Allege the Existence of a Market for the Digital Files Zhang Allegedly Stole</u>

Having concluded that the indictment must be dismissed because it does not allege that Zhang stole goods, wares, or merchandise within the meaning of the NSPA, we do not reach Zhang's argument that the Indictment must also be dismissed for failure to allege the existence of a market for the files Zhang allegedly stole.

IV. CONCLUSION

For the foregoing reasons, we will grant Zhang's motion to dismiss Count II of the Indictment.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.

---

obstacle to condemnation is a clever intermediate transcription or use of a photocopy machine." 365 F.2d at 393–94. This discussion is inapposite to the present motion because Zhang is not accused of stealing or transporting tangible goods.

[5] We echo the sentiment expressed by the Second Circuit: In terms of moral culpability, there may be little to distinguish a defendant who transports information stolen in purely digital form from a defendant who transports information stolen by storing it on a flash drive or printing it on paper. "But it is Congress's task, not the courts', to define crimes and prescribe punishments." <u>Agrawal</u>, 726 F.3d at 253.